UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| MICHAEL DEWAYNE PADGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 0:24-CV-108-DLB-HAI |
| v. | ) | |
| | ) | |
| KENTUCKY DEPARTMENT OF | ) | RECOMMENDED DISPOSITION |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court considers cross-motions for summary judgment.  D.E. 84; D.E. 85.  For the reasons described herein, the undersigned recommends that Defendants' motion for summary judgment be granted as to Defendants Christina Smith and Phillip Smith and denied as to Defendant McKenzie.  It is further recommended that Plaintiff's motion for summary judgment be denied.

## I.   Background

*Pro se* Plaintiff Michael Dewayne Padgett initiated this civil rights case against a number of Defendants on November 26, 2024.  D.E. 1.  District Judge Bunning described the factual basis of Plaintiff's claims as follows:

> [Padgett] was confined in the restricted housing unit at [Eastern Kentucky Correctional Complex ("EKCC")] in September 2024.  *See* Doc. # 1 at 2.  He asked to be placed in protective custody because he had been threatened by other inmates who are gang members.  *Id*.  However, Defendant Mr. Smith (Unit Administrator) denied his request.  The denial was affirmed by the EKCC classification committee, Defendant Deputy Warden Christian Smith, and the KDOC.  *Id*.  Then, in October 2024, Padgett wrote a letter to EKCC Warden Shawn McKenzie informing him of the serious risk Padgett would face if he were required to return to general population.  *Id*. at 2-3.  McKenzie did not respond and Padgett was returned to general population on October 25, 2024.  *Id*. at 3.

Padgett was initially placed in Dorm 2. However, he indicates that Defendant John Doe (Dorm 3 Unit Administrator) moved him "to the most violent dorm at EKCC" based on another inmate's request on October 28, 2024. *Id.* The following day, three inmates (including the inmate who requested Padgett's transfer to the new dorm) entered Padgett's cell and violently assaulted him. Padgett was eventually transported to a local hospital for evaluation. Upon return to EKCC, he was placed in the restricted housing unit pending administrative transfer to a different institution. On November 1, 2024, Padgett was transferred to LSCC. Padgett complains that gang members at LSCC are aware of the assault and he still has not been placed in protective custody.

D.E. 20 at 1-2. On initial review, Judge Bunning dismissed Plaintiff's claims as to a number of Defendants, allowing him to proceed only with his § 1983 Eighth Amendment Failure to Protect claim against EKCC Warden Shawn McKenzie, Deputy Warden Christina Smith, Unit Administrator Phillip Smith, and John Doe (Dorm 3 Unit Administrator). *Id.* at 4. The case was referred to the undersigned on May 13, 2025, to "conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions." D.E. 33.

Defendants filed a motion for summary judgment on December 12, 2025. D.E. 84. Plaintiff responded, and Defendants did not file a reply. *See* D.E. 92. Plaintiff similarly filed a motion for summary judgment, postmarked December 10, 2025. D.E. 85. Along with the summary judgment motion and evidence, Plaintiff also filed a motion to amend his complaint which seeks to add additional defendants based on untimely discovery responses received from the current Defendants. D.E. 85-1 at 6-8. Defendants responded to the summary-judgment motion (D.E. 91), and while they did acknowledge Plaintiff's motion to amend, they did not respond to it (*see id.* at 6). Plaintiff filed a timely reply. D.E. 93. As they stand fully briefed, the motions are now ripe for adjudication.

## II.   Evidentiary Disputes

Subsidiary to the pending motions for summary judgment, the parties have raised concerns regarding evidence in this case.  First, Defendants argue that Plaintiff created a fake letter to Defendant McKenzie to support his summary-judgment motion.   Second, Plaintiff attempted to file additional evidence after the dispositive deadline passed and the motions for summary judgment were fully briefed.  The Court will briefly address each issue and their impact on the parties' requests for summary judgment before analyzing the cross-motions.

### A.  Authenticity of Letter in Plaintiff's Motion for Summary Judgment

First, Defendants have raised concerns about the authenticity of Plaintiff's letter to Defendant McKinzie attached to his motion for summary judgment. D.E. 91 at 6-7; *see also* D.E. 85-1 at 1-2.  The letter is dated ten days before the incident at issue in the Complaint allegedly took place.  In discussing the letter, Defendants argue:

> Plaintiff is being dishonest with the Court and has attempted to deceive the Court through fabricated evidence.  Plaintiff's words through motions and the complaint show that this evidence is fabricated.  Moreover, Defendant McKenzie attested to the fact he did not receive a letter from Plaintiff in October 2024 [D.E. 84-3].

D.E. 91 at 6.  Plaintiff does not address Defendants' argument.

Ultimately, the authenticity of the letter is inconsequential at this point because it does not have an impact on the Court's analysis of these two motions for summary judgment. Plaintiff is primarily using the letter to argue that Warden McKinzie was aware of the threat of serious harm to Plaintiff and that Plaintiff named the individuals that posed that threat. Meanwhile, Defendants argue, in part, that summary judgment should be granted in their favor because Plaintiff allegedly refused to name a specific individual threatening his safety.  As discussed further below, Plaintiff does not need to rely on the letter to prove Defendant McKinzie knew the names of those threatening him.  The same information is in his protective

custody Classification Committee appeal form, along with a specific description of the gang and the threats. D.E. 88-2. Nonetheless, the Court will address Defendants' argument to the extent that the validity of the letter implicates Plaintiff's overall credibility.

Defendants do not argue that Plaintiff should be sanctioned or that the letter should be stricken because he failed to provide it during discovery. They solely request that the Court not consider the letter in making its determination on the summary-judgment motions. Meanwhile, Plaintiff has specifically referenced this letter throughout the case, beginning with his Complaint. *See* D.E. 1 at 2-3; D.E. 55-2 at 8. The content of the letter is also consistent with the allegations in the Complaint and Plaintiff's version of the events.

Defendants identify three reasons they believe the letter is fake, none of which sufficiently call Plaintiff's credibility into question. First, they argue that the letter includes a suspicious inconsistency from Plaintiff's earlier filings and summary judgment motion. Prior to the close of discovery, according to Defendants, Plaintiff said he requested protective custody in September and October of 2024. *See* D.E. 91 at 6. However, in this letter filed after the close of discovery, he "miraculously" knew that he made the protective custody request in August. *Id*. Plaintiff made his initial request on August 28, only a few days before September of 2024. D.E. 84-1. It is not unreasonable for him to not know the exact date of his initial request until receiving and reviewing discovery, particularly as an incarcerated *pro se* litigant who was transferred between three prisons between the date of the incident and the filing of dispositive motions. This three-day discrepancy is not significant.

Second, Defendants argue that the letter is fake because it refers to Classification and Treatment Officer ("CTO") Gary Wright, but Plaintiff did not name Wright in the Complaint and seeks to add him as a defendant in his current motion to amend the complaint. D.E. 91 at 6-7.

4

As discussed in more detail below, this undermines Plaintiff's motion to amend the Complaint to add CTO Wright as a defendant. However, it is reasonable to believe that Plaintiff overlooked Wright at the beginning of the litigation. Plaintiff named eight Defendants in his complaint and attempted to name several more in his first motion to amend his complaint. D.E. 1; D.E. 25. Wright conducted the initial investigation into his protective custody request. D.E. 84-1 at 1. It is just as likely that Plaintiff knew of Wright when the letter was written, but forgot about his involvement, as it is that the letter is fabricated.

Finally, Defendants argue that Defendant McKenzie attested that he did not receive a letter from Plaintiff in October 2024 in McKenzie's answer to Plaintiff's Requests for Admissions. D.E. 91 at 7. Defendants further argue that the fact that Plaintiff did not raise this issue when contesting other discovery concerns undermines the validity of the letter. *Id.* Plaintiff did challenge the sufficiency of answers to his requests for admission to all three Defendants in a motion that was ultimately denied. D.E. 72; D.E. 90. However, several times Plaintiff was granted relief based on Defendants' fraudulent or nonexistent discovery responses throughout discovery. *See* D.E. 54 (granting Plaintiff's motion to compel); D.E. 76 (granting Plaintiff's motion for sanctions). Defendants consistently failed to follow the Federal Rules of Civil Procedure and a myriad of Court Orders pertaining to their discovery obligations. Against this backdrop, Plaintiff's omission of one potential discovery dispute is not an indication of Plaintiff's dishonesty. Meanwhile, the defense has undermined its own credibility with the plethora of violations noted by Plaintiff and the Court throughout litigation.

### B.     Evidence from February 17 Filing

The second broad evidentiary issue underpinning the motions for summary judgment involves a February 17, 2026, filing from Plaintiff with a medical report from the Kentucky State

5

Penitentiary.  D.E. 94.  It includes entries from October 30, 2024, which include a confirmed diagnosis of adult sexual abuse.  D.E. 94-1 at 1.  Plaintiff requests that the Court consider it along with the dispositive motions.  It was filed long after the deadline for dispositive motions was due, so Defendants did not have a meaningful opportunity to respond.

The health records note that, on October 30, 2024, a medical examination of Plaintiff resulted in a confirmed instance of adult sexual abuse.  D.E. 94-1.  Whether EKCC substantiated Plaintiff's sexual assault claim is unclear.  Plaintiff filed an Open Records Request with the Kentucky State Penitentiary ("KSP") that was denied and then he appealed to the Attorney General's Office.  The Office of the Attorney General stated that they had spoken with the Prison Rape Elimination Act ("PREA") Compliance Manager for KSP Offender Information Services who, supposedly, confirmed the October 28 incident was a PREA-related incident and that "the allegation had been determined to be substantiated."  D.E. 55-2 at 1, 3.  A later Sexual Abuse Incident Review (SAIR) Report, signed by EKCC management staff, instead marks the incident as "unsubstantiated."  D.E. 81-3 at 2.  Defense counsel did not acknowledge the discrepancy until it was raised by Plaintiff.  *See* D.E. 72 at 4.  In response, defense counsel filed an affidavit from the author of the AOG letter which stated that "an inaccurate statement was inadvertently made" and describes a subsequent communication with the PREA coordinator.  D.E. 81-3.  However, the recently filed medical report (D.E. 94-1) again contradicts Defendants' argument.

Ultimately, whether authorities deemed Plaintiff's sexual assault to be substantiated is inconsequential to the determination of the cross-motions for summary judgment.  Beyond arguments made about the delayed filing and the lack of opportunity for Defendants to respond, the Court does not need to consider the report here because whether the sexual assault occurred is not at issue in the motions.  Defendants do not attempt to argue that Plaintiff did not

experience harm, only that he failed to exhaust administrative remedies, Defendants were not subjectively aware of a risk of harm, and Defendants had qualified immunity. They do not contest the fact that Plaintiff was actually harmed. Meanwhile, Plaintiff's motion does not provide significant argument as to the first element of a deliberate indifference claim. Instead, he focuses upon Defendants' awareness of the threat to his safety.

### III.    Motions for Summary Judgment

A party is entitled to summary judgment if they "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To demonstrate that a fact is not genuinely disputed, a party can either (1) cite materials in the record supporting their factual position or (2) show that the materials do not establish a dispute, or that a party cannot produce evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1). The moving party does not need its own evidence to support this assertion but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003).

The Court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Courts liberally construe the filings of pro se claimants and hold their filings to a less stringent standard than similar filings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

## A.      Exhaustion

First, Defendants argue that summary judgment is warranted because Plaintiff failed to exhaust his administrative remedies. Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act of 1995 ("PLRA") for any lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "There is no question [that] unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It is not the prisoner's threshold burden to prove exhaustion; rather lack-of-exhaustion is an affirmative defense.[1] *Id*. Once raised, the prisoner bears the burden of demonstrating proper exhaustion. And summary judgment is appropriate if the defendant can establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Prisoners must exhaust all "available" remedies—not just those that meet federal standards. *Woodford*, 548 U.S. at 85. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. at 87 (quoting

---

[1] In their response to Plaintiff's  motion for summary judgment, Defendants argue that the motion "does not overcome his burden to exhaust remedies" and argues Plaintiff failed to address it because "exhaustion is a burden he simply cannot overcome." D.E. 91 at 1. Plaintiff did not have a burden to address exhaustion until it was substantively raised by Defendants as an affirmative defense. In his response to Defendants' motion for summary judgment, Plaintiff does address the exhaustion issue. *See* D.E. 92.

*Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."   *Id*. at 90-91.   It is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion.   *Jones*, 549 U.S. at 218.

**1.      Protective Custody Appeal Process**

In support of their position that Plaintiff failed to exhaust his administrative remedies, Defendants first argue that Plaintiff failed to complete the appellate process for his protective custody request.   The Kentucky Department of Correction's Policy and Procedure ("CPP") 18.15 lists the following steps for an inmate adjudicating a protective custody issue:

1.  When an inmate makes their initial request, the institution staff conducts an investigation into the matter raised.

2.  The inmate sits before the Classification Committee, which determines whether the request will be granted.

3.  If the inmate disagrees with the Committee's decision, the inmate must appeal the decision to the Warden or his designee within five days.

4.  "If the inmate is not satisfied with the response received from the Warden or his designee, the inmate may appeal in writing to the Director of Population Management by completing the appropriate space on the protective custody form within five . . . working days of receipt of the Warden's response.   Institutional staff shall notify the Director of Population Management of the appeal."

D.E. 84-3 at 5.

The parties agree that an investigation occurred, that Plaintiff sat before the Classification Committee, and that Plaintiff appealed to the Warden. At issue is whether Plaintiff appealed the Warden's decision to the Director of Population Management. Plaintiff argues that he did appeal the decision, while Defendants argue that Plaintiff did not file an appeal and instead requested to be released into general population after receiving the Warden's denial. D.E. 92 at 4-6; D.E. 84 at 6.

Plaintiff's appellate process is detailed in a Protective Custody Form. D.E. 84-1. It demonstrates that Plaintiff appealed the Classification Committee's denial to the Warden. The Form, however, marks both that Plaintiff did not wish to appeal to the Central Office (to be reviewed by the Director of Population Management) and that the Central Office disapproved of his appeal, denied Plaintiff protective custody, and released him. *Id*. The Central Office decision states a specific date of decision, which occurred after the Warden's denial. It also includes the signature of one chairperson, and two boxes that appear to be electronic signatures. Despite Plaintiff raising the issue in his briefing, Defendants never address this discrepancy.

An affidavit from Defendant McKenzie states that Plaintiff did not wish to appeal.[2] *See* D.E. 84-3 at 2. In Plaintiff's affidavit, he states that he wanted to appeal and that he never told Defendants that he wanted to return to general population. D.E. 92-2 at 2. He also states that he was not permitted to read the Protective Custody appeals form – he was just instructed to electronically sign the report. *Id*. The parties' alternative narratives are further complicated by the electronic signatures on the Protective Custody Form (D.E. 84-1). Although Defendants argue that Plaintiff signed the section of the form stating he did not wish to appeal, the version of

---

[2] As Plaintiff notes, Defendant McKenzie's affidavit is improperly notarized. The certificate of notarization erroneously states that the notary subscribed and swore to the affidavit, not Defendant McKenzie. D.E. 84-3 at 2. This further supports a finding that there is a genuine issue of material fact as to the appeal to the Director of Population Management.

the form submitted to the Court and, presumably, provided to Plaintiff in discovery only includes a blank box in the signature slot. D.E. 84-1. Defendants claim this is Plaintiff's signature, but with no visible signature, the Court cannot determine whether Plaintiff's signature, or any signature, is included.

Whether Plaintiff fully appealed the protective custody decision remains a genuine dispute of material fact. As such, the Court cannot grant summary judgment for Defendants on this ground.

**2.      Grievance Policy**

Defendants also vaguely assert that Plaintiff failed to exhaust his administrative remedies by insufficiently following the grievance procedure under CPP 14.6. D.E. 84 at 6-7. CPP 14.6 (D.E. 84-5) permits an inmate to file a grievance within five business days after an incident occurred. The grievance process broadly includes most inmate grievances. Notably, the policy specifically lists classification decisions or appeals of classification decisions as non-grievable issues. D.E. 84-5 at II.C.

In the Complaint, Plaintiff states that he did file a grievance pursuant to CPP 14.6. D.E. 1 at 8. In their motion for summary judgment, Defendants argue: (1) Plaintiff has not produced a copy of the grievance to the Court; (2) Plaintiff could not have filed a timely grievance in November of 2024, and (3) the Department of Corrections ("KDOC") does not have records of Plaintiff's grievance. D.E. 84 at 6-7. Defendants' first and third arguments are undermined by Plaintiff's filing of the grievance in his response to their motion for summary judgment. *See* D.E. 92-1 at 6-8. A decision on the grievance was issued by staff on November 12 on KDOC letterhead (D.E. 92-1 at 8), so any failure to maintain the document in KDOC's records is not reason for the Court to find that Plaintiff failed to exhaust this claim. The grievance was also

11

timely.   Plaintiff's grievance relates to the alleged sexual assault caused by Defendants' protective custody denial, not solely the protective custody denial.  The incident occurred on Tuesday, October 29.  The grievance was filed Tuesday, November 5, 2024 – within five business days of the incident.  Further, the grievance was denied on November 12, three days before Plaintiff initially mailed his Complaint in the instant matter.  D.E. 92-1 at 8.

Moreover, Plaintiff did not need to seek administrative exhaustion through the grievance process after the incident because it did not provide a remedy.  "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but [the Sixth Circuit] has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'"  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011)).  Despite the fact that the KDOC's grievance policy does not apply to protective custody decisions (*see* D.E. 84-5 at 2; D.E. 84-3 at 3-4), Plaintiff attempted to seek relief through that process.  His grievance was specifically denied due to the non-grievable issue.  D.E. 92-1 at 8  ("You cannot grieve a Classification Action.  You can request Protective Custody at any time to any staff member.").  Plaintiff therefore made "affirmative efforts" to administratively exhaust his claims and accurately determined no further remedies were available before filing this lawsuit.  As such, Defendants are not entitled to summary judgment on this argument.

### B.   Failure to Protect

### 1.   Legal Standards

Substantively, Plaintiff has alleged that Defendants failed to protect him in violation of the Eighth Amendment, showing a deliberate indifference to his safety.  Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511

U.S. 825, 833 (1994). A constitutional claim for deliberate indifference to an inmate's safety requires a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834). "The Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)). Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Id.* (quoting *Farmer*, 511 U.S. at 834).

To show that the alleged mistreatment was objectively "sufficiently serious," the plaintiff must show he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *Bishop*, 636 F.3d at 766. The plaintiff's alleged threat must be "based upon more than his subjective fear." *Browning v. Pennerton*, 633 F. Supp. 2d 415, 423 (E.D. Ky. 2009). "A threat of bodily harm is sufficiently serious to satisfy the objective component of a deliberate indifference claim." *Madden v. Grate*, No. 5:19-CV-73-TBR-LLK, 2020 WL 95138, at *3 (W.D. Ky. Jan. 8, 2020) (collecting examples).

The subjective component requires a showing that prison officials acted with "deliberate indifference" to inmate health or safety:

> An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." [*Farmer*, 511 U.S. at 837.] The Supreme Court has held that:
>> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. [*Id.* at 842.]

13

However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it.

*Bishop*, 636 F.3d at 766-67.

**2.    Defendants Christina Smith and Phillip Smith**

Defendants establish entitlement to summary judgment as to Defendants Christina Smith and Phillip Smith because they were not working during the period in which Plaintiff sought and was denied protective custody.    Their motion for summary judgment includes the two Defendants' timesheets, which show they were both out of the office from August 31 to September 15, 2024.    D.E. 84-2 at 1-2.    The investigation into Plaintiff's protective custody request began on August 28.    D.E. 84-1 at 1.    The Classification Committee and Warden's decision to deny the request were made on September 9 and September 13, respectively, during which time the two Defendants were not working.    As they were not working during the time Plaintiff's request was being processed, they could not have been subjectively aware of any risk to Plaintiff's safety.    In his response, and elsewhere in his briefing on the dispositive motions, Plaintiff does not address their leave period or propose another theory of liability.    There is no dispute of facts, and Defendants Christina Smith and Phillip Smith are entitled to judgment as a matter of law.

**3.    Defendant McKenzie**

**a.    Deliberate Indifference Analysis**

Unlike the other two named Defendants, Defendant McKenzie appears to have been involved in the denial of Plaintiff's protective custody request.    Pursuant to CPP 18.15, after denial of a protective custody request by the Classification Committee, an inmate appeals to the

Warden or his designee.[3]   In support of summary judgment for Defendant McKenzie, Defendants state that Plaintiff refused to provide specific information about the threat of harm, namely that "McKenzie and his designee did not have facts that would suggest that Plaintiff was at a substantial risk of harm from an identifiable person(s)." D.E. 84 at 11.  The motion argues:

> Lacking specificity, no risk can be perceived.  Defendant McKenzie cannot be held liable for failing to protect Plaintiff from an unknown inmate.  Defendant McKenzie did not have specific knowledge of the inmates that were threatening Plaintiff. Plaintiff cannot show that Defendant McKenzie had sufficient facts from which to draw an inference that Plaintiff was at a substantial risk of harm. Therefore, Plaintiff cannot establish the second prong of his failure to protect claims, and Defendant McKenzie is entitled to judgment as a matter of law.

D.E. 84 at 11-12.

Defendants' argument is flawed because the record demonstrates Plaintiff did identify specific individuals, a specific group, the location, and detailed information about the threats. Plaintiff's handwritten appeal to Defendant McKenzie provides sufficient information contrary to the dearth of specificity described by Defendants.  *See* D.E. 88-2.  It requests review of the Classification Committee's decision, stating that "Scooter," "JD," and Brandon Merrell ("Hellboy") from the Simon City Royals were taking Plaintiff's dining cards every week on Mondays, Wednesdays, Thursdays, and Fridays.  *Id.*  It claims he was extorted while in Dorm 4 by those individuals, referencing the underlying claims made to spur the investigation and the Classification Committee's initial meeting.  It also cites a specific camera that allegedly recorded the named individuals escorting Plaintiff to and from the dining hall when the extortion was said to occur.  *Id.* at 2.

---

[3] The denial of the protective custody decision was signed by the Warden's designee, J. Elam.  Defendants never argue that Defendant McKenzie was not personally involved in the decision.  *See* D.E. 84 at 10-11.  Further, according to the classification procedures from KDOC's CPP, the "classification designee" shall report any actions to the warden/classification committee and the inmate.  D.E. 84-3 at 5; *see also* CPP 18.1(II)(F)(2).

EKCC's policy on protective custody permits denial where the inmate fails to provide the names of allegedly threatening individuals. *See* 84-3 at 4. Plaintiff alleges he did inform the Classification Committee of the names of those threatening him, while Defendants claim he did not. Nonetheless, regardless of what Plaintiff actually did or did not say prior to his appeal, it is undeniable that he provided the inmates names and additional specificity in the appeal. Defendants have failed to establish a lack of genuine dispute about whether Defendant McKenzie was aware of the threat to Plaintiff's safety and is not entitled to summary judgment on this ground.

**b.      Qualified Immunity**

Finally, Defendants argue that they are entitled to summary judgment based on qualified immunity. D.E. 84 at 12. Because Defendants Christina Smith and Phillip Smith have established a lack of genuine dispute of material facts and that they are entitled to judgment as a matter of law, the undersigned will only address Defendant McKenzie's qualified immunity claim.

> Qualified immunity protects state officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the alleged misconduct.

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations and quotation marks omitted). "[Q]ualified immunity must be assessed in the context of each individual's specific conduct." *Id*. at 624. "The burden rests on Plaintiff to show Defendants are not entitled to immunity." *Id*. at 623.

The alleged constitutional violation, as previously discussed, is Defendant McKenzie's deliberate indifference to Plaintiff's safety under the Eighth Amendment. In support of their

motion for summary judgment, Defendants have only argued that there is no constitutional violation because Defendant McKenzie did not know the identities of the alleged perpetrators. D.E. 84 at 12-13  As previously discussed, Plaintiff has pointed to evidence in the record contradicting this evidence.  Viewed in the light most favorable to Plaintiff, Plaintiff has established a constitutional violation.  Plaintiff has alleged that he was incarcerated under conditions wherein he was under a threat of serious bodily harm from those attempting to extort him.  As his handwritten appeal includes the specific names of the alleged individuals, Defendant McKenzie, according to Plaintiff, was subjectively aware of the threat.

Defendant McKenzie is not entitled to summary judgment on qualified immunity.

### C.      Plaintiff's Motion for Summary Judgment

While Defendants have failed to establish that Defendant McKenzie is entitled to summary judgment, Plaintiff's motion similarly fails to establish that all elements of his claim are satisfied.  The same factual disputes defeating Defendant McKenzie's summary judgment motion, including those on exhaustion and whether Plaintiff named specific individuals in his protective custody request, also defeat Plaintiff's motion.  Additionally, Plaintiff's motion and subsequent briefing on his deliberate indifference claim discuss in detail Defendants' awareness of the threat to his safety, but does not meaningfully address whether the alleged mistreatment was "sufficiently serious."  Plaintiff's motion does briefly describe the alleged mistreatment.  His reply addresses the seriousness of his sexual assault.  However, without evidence-backed arguments about how his incarceration under these conditions posed a substantial risk of serious harm, the Court cannot grant his request for summary judgment.

### III. Motion to Amend Complaint

Along with his motion for summary judgment, Plaintiff filed a Motion to Amend his complaint. D.E. 85-1 at 6-8. The motion seeks to amend the Complaint to name Carl Davis as John Doe and to add three other EKCC employees as defendants based on their alleged involvement in denying his request for protective custody. Defendants did not respond, despite the fact that multiple times in this case they have been expressly warned that failure to respond could lead to Plaintiff's motion being granted. *See, e.g.*, D.E. 51; D.E. 54. Defendants also clearly saw and read the motion; it is acknowledged in their response to Plaintiff's motion for summary judgment. D.E. 91 at 6. Although they point out the motion to amend to attempt to undermine the credibility of Plaintiff's evidence, they do not address its merits.

Leave to amend pleadings should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether to grant leave is within the discretion of the District Court, but "outright refusal" without "any justifying reason" is impermissible. *Id.*

The Court cannot grant the motion to amend because Plaintiff does not explain what the amended complaint will allege or how the new defendants are liable. "[I]mplicit in [Rule 15(a)(2)] is that the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002). The extent to

18

which the motion to amend the complaint includes any § 1983 allegation against the proposed new parties is limited to the following "[t]hese individuals are also responsible for the violation of plaintiffs civil rights . . ."  D.E. 85-1 at 7.  With this limited briefing, the Court cannot evaluate whether "justice so requires" granting leave to amend.

Further, the *Foman* factors weigh against granting leave to amend.  There does not appear to be any undue delay or bad faith on Plaintiff's part, but nonetheless amendment at this point in the litigation would be extremely prejudicial to all parties, particularly the new proposed defendants.  The motion was filed a year and a half after Plaintiff's complaint, after the end of discovery and contemporaneous with the dispositive motion deadline.  Additionally, without information about the substance of the amendment, the Court cannot determine whether the amendments would be futile.

Finally, Plaintiff does not explain why he did not seek to add Darren Elam, Evie Oldham, or Gary White previously.  While he might not have known these individuals' names, he was clearly aware of the Classification Committee's involvement in his protective custody denial.  He named John Doe as a Defendant in the suit in place of Carl Davis.  There is no reason why he did not do the same for the unidentified, but well-known, participants from the Classification Committee.  Also, as Defendants note, if the letter attached to his motion for summary judgment is legitimate, he was clearly aware of Gary White's involvement in the denial of protective custody based on the letter attached to Plaintiff's motion for summary judgment.  See D.E. 85-1 at 1 ("I told CTO Gary Wright and Deputy Warden Christine Smith that . . .").

## IV.    Conclusion

The undersigned **RECOMMENDS** that:

(1)     Plaintiff's Motion for Summary Judgment (D.E. 85) be **DENIED**.

19

(2)     Defendants' Motion for Summary Judgment (D.E. 84) be **GRANTED IN PART**, as to Plaintiff's claims against Defendants Christina Smith and Phillip Smith, and **DENIED** as to Defendant Shawn McKenzie.

(3)     Plaintiff's Motion to Amend the Complaint (D.E. 85-1) be **DENIED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, **by the District Judge.** Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 22nd day of June, 2026.

Signed By:

*Hanly A. Ingram*
United States Magistrate Judge