**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 24-108-DLB-HAI**

**MICHAEL D. PADGETT** **PLAINTIFF**

**v.** **ORDER ADOPTING RECOMMENDED DISPOSITION**

**KENTUCKY DEPARTMENT OF CORRECTIONS, et al.** **DEFENDANTS**

* * * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on the June 22, 2026 Recommended Disposition of United States Magistrate Judge Hanly A. Ingram, wherein he recommends that the Court deny Plaintiff Michael Padgett's *pro se* Motion for Summary Judgment (Doc. # 85) and Motion to Amend the Complaint (Doc. # 85-1), grant Defendants' Motion for Summary Judgment (Doc. # 84) as to Defendants Christian Smith and Phillip Smith, and deny Defendants' Motion as to Defendant Shawn McKenzie. (Doc. # 98 at 1). Defendant McKenzie has filed written Objections to the Recommended Disposition (Doc. # 99) and Padgett has filed a Response to those Objections (Doc. # 100). Accordingly, the Recommended Disposition is ripe for the Court's review. For the following reasons, McKenzie's Objections are **overruled**, the Recommended Disposition is **adopted**, Padgett's Motion for Summary Judgment (Doc. # 85) is **denied**, Padgett's Motion to Amend the Complaint (Doc. # 85-1) is **denied**, and Defendants' Motion for Summary Judgment (Doc. # 84) is **granted in part** and **denied in part**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court incorporates the factual background as set forth in the Recommended Disposition. (Doc. # 98 at 1–2). Nonetheless, the Court will provide a brief summary as necessary to evaluate McKenzie's Objections.

Plaintiff Michael Padgett was confined in the restricted housing united at Eastern Kentucky Correctional Complex ("EKCC") in September 2024. (*Id*. at 1 (citing Doc. # 20 at 1–2)). Padgett asked Defendant Phillip Smith, the Unit Administrator at EKCC, to be placed in protective custody because he had been threatened by other inmates who are gang members, but Smith denied his request. (*Id*.). After Padgett appealed Smith's initial denial, the EKCC classification committee, Defendant Deputy Warden Christian Smith, and the Kentucky Department of Corrections ("KDOC") denied Padgett's request. (*Id*.).

Following the denial, in October of 2024, Padgett wrote a letter to EKCC Warden Shawn McKenzie informing the Warden of the serious risk he would face if he were returned to general population. (*Id*.). McKenzie did not reply to Padgett's letter, and Padgett was returned to general population on October 25, 2024. (*Id*.). Padgett was initially assigned to Dorm 2, but he claims he was later transferred to "the most violent dorm at EKCC" by Defendant John Doe, the Dorm 3 Unit Administrator. (*Id*. at 2 (citing Doc. # 20 at 1–2)). Padgett claims he was transferred based on another inmate's request. (*Id*.).

On October 29, 2024, the day after transferring into his new dorm, Padgett was violently assaulted by three inmates, including the one who requested his transfer. (*Id*.). He was transported to a local hospital for evaluation and, upon his return to EKCC, placed in the restricted housing unit pending his transfer to another institution. (*Id*.). On

November 1, 2024, Padgett was transferred to Little Sandy Correctional Complex ("LSCC"). (*Id.*). Padgett alleged that gang members at LSCC were aware of the previous assault at EKCC. (*Id.*).

Padgett filed his *pro se* Complaint in this Court on November 26, 2024. (Doc. # 1). On its initial review, this Court dismissed Padgett's claims against several Defendants he named, allowing only his § 1983 Eighth Amendment claims against Defendants McKenzie, Christian Smith, Phillip Smith and John Doe to continue. (Doc. # 98 at 2 (citing Doc. # 20 at 4)).

Defendants filed their Motion for Summary Judgment (Doc. # 84) on December 12, 2025. Padgett filed a Response to Defendants' Motion on January 22, 2026 (Doc. # 92), and Defendants did not file a Reply. Padgett filed his Motion for Summary Judgment (Doc. # 85) on December 16, 2025. Defendants filed a Response on January 12, 2026 (Doc. # 91) and Padgett filed a Reply on January 22, 2026 (Doc. # 93).

Judge Ingram issued his Recommended Disposition on June 22, 2026, recommending that the Court deny Padgett's Motion for Summary Judgment and Motion to Amend Complaint. (Doc. # 98). Judge Ingram also recommended that the Court grant Defendants' Motion for Summary Judgment as to Defendants Smith and Smith and deny the Motion as to Defendant McKenzie. (*Id.*). On July 6, 2026, Defendant McKenzie filed Objections to the Recommended Disposition (Doc. # 99), and on July 17, 2026, Padgett filed his Response to McKenzie's Objections (Doc. # 100). Accordingly, the matter is ripe for the Court's review.

## III. RECOMMENDED DISPOSITION

Judge Ingram began his Recommended Disposition by addressing several evidentiary disputes the parties raised. First, Judge Ingram analyzed Defendants' argument that Padgett produced a false, inauthentic letter to aid his summary judgment motion. (Doc. # 98 at 3). Judge Ingram concluded that "[u]ltimately, the authenticity of the letter is inconsequential at this point because it does not have an impact on [Judge Ingram's] analysis of these two motions for summary judgment." (*Id*.). Notwithstanding, Judge Ingram found that the letter did not call Padgett's credibility into question and was not an indication of his overall dishonesty. (*Id*. at 4–5). Next, Judge Ingram moved to Padgett's filing of a medical report from the Kentucky State Penitentiary that was filed long after the deadline for dispositive motions. (*Id*. at 5–6). Because the contents of the report were not relevant to the issues of summary judgment motions, Judge Ingram did not make any formal rulings on the late report. (*Id*. at 6–7).

Judge Ingram then addressed the merits of the two motions for summary judgment. He first addressed Defendants' exhaustion argument, where Defendants argued they are entitled to summary judgment because Padgett failed to exhaust his administrative remedies. (*Id*. at 8). After setting forth the federal standard for prison remedy exhaustion, Judge Ingram analyzed what steps Padgett took toward exhausting his available remedies. (*Id*. at 9). He found that, once an inmate makes a protective custody request, institution staff must first conduct an investigation into the matter. (*Id.*). After the investigation, Judge Ingram opined that the inmate must sit before the Classification Committee, which then determines whether the inmate's request will be granted. (*Id.*). Judge Ingram then found that an inmate may appeal the Committee's

adverse decision to the Warden of their facility within five days. (*Id.*). Then, Judge Ingram found, if an inmate is not satisfied with the Warden's response, the inmate may appeal the decision to the Director of Population Management within five days of receipt of the Warden's response. (*Id.*).

Judge Ingram concluded that the motion at hand turned on whether Padgett appealed Warden McKenzie's decision to the Director of Population Management. (*Id.* at 10). He found that Padgett submitted a Protective Custody Form which demonstrated that he appealed the Committee's decision to McKenzie. (*Id.*). However, Judge Ingram noted the discrepancy on the form, which stated that Padgett both did not wish to appeal and that the Central Office—where the Director of Population Management works—denied Padgett's appeal. (*Id.*). Judge Ingram also noted that Defendant McKenzie's affidavit stated that Padgett indicated he did not wish to appeal, directly contradicting Padgett's submitted affidavit. (*Id.*). On this basis, Judge Ingram concluded there was a genuine dispute of material fact as to whether Padgett appealed the protective custody decision, such that summary judgment was not appropriate on that ground. (*Id.* at 11).

Next, Judge Ingram addressed the parties' arguments on whether Padgett adhered to the prison's grievance procedures. Finding that Padgett did, in fact, file a grievance, Judge Ingram denied Defendants' exhaustion argument because Padgett made "affirmative efforts" to administratively exhaust his claims, even if his grievance was denied. (*Id.* at 12).

Judge Ingram next moved to Defendants' substantive arguments, starting with their attacks on Padgett's claim that Defendants failed to protect him in violation of the Eighth Amendment, showing a deliberate indifference to his safety. (*Id.* at 13). After

putting forth the requisite standard, Judge Ingram analyzed Defendants' arguments on Padgett's claims against each individually named Defendant. (*Id.* at 14). He started with Christian and Phillip Smith. (*Id.*). Judge Ingram found that summary judgment was appropriate for each of the Smiths because their timesheets in the evidentiary record showed that they were out of the office on the days Padgett's request was pending. (*Id.*). Since there was no dispute of facts and Padgett did not address either Smith's absence, Judge Ingram granted summary judgment for Christian and Phillip Smith. (*Id.*).

Judge Ingram next moved on to Padgett's claims against Warden McKenzie. (*Id.*). He first took note of Defendants' argument that Padgett's accusations were not specific enough because Defendant McKenzie could not ascertain which inmates Padgett wanted protection from by prison officials. (*Id.* at 15). But Judge Ingram dismissed this argument, finding that Padgett had identified "specific individuals, a specific group, the location, and detailed information about the threats [against him]." (*Id.* at 15). And because Padgett included names in his appeal to the Warden, Judge Ingram found that Defendants have failed to establish a lack of genuine dispute about whether McKenzie was aware of the threat to Padgett's safety, such that summary judgment was not appropriate. (*Id.* at 16). Judge Ingram then denied Defendants' qualified immunity as to McKenzie because Padgett had shown that McKenzie violated Padgett's rights under the Eighth Amendment by showing deliberate indifference to Padgett's safety. (*Id.* at 16–17).

Judge Ingram then moved to Padgett's Motion for Summary Judgment. He concluded that Padgett's Motion would be denied because "[t]he same factual disputes defeating Defendant McKenzie's summary judgment motion, including those on exhaustion and whether Plaintiff named specific individuals in his protective custody

request, also defeat [Padgett's] motion." (*Id.* at 17). Judge Ingram concluded that "without evidence-backed arguments about how his incarceration under these conditions posed a substantial risk of serious harm," he could not grant summary judgment on Padgett's claims. (*Id.*).

Finally, Judge Ingram addressed Padgett's Motion to Amend Complaint. He first noted that Padgett wanted to name five additional EKCC employees as defendants based on their involvement in denying his request for protective custody, and that Defendants did not address Padgett's Motion. (*Id.* at 18). Judge Ingram quickly concluded that Padgett's Motion to Amend could not be granted because Padgett failed to why justice required the motion be granted. (*Id.* at 19). Further, Judge Ingram found that granting the motion would be prejudicial to the parties due to the motion's untimeliness. (*Id.*).

In conclusion, Judge Ingram recommended that Padgett's Motion for Summary Judgment (Doc. # 85) be denied, Defendants' Motion for Summary Judgment (Doc. # 84) be granted in part as to Plaintiff's claims against Defendants Smith and Smith, and denied as to Defendant McKenzie, and Padgett's Motion to Amend the Complaint (Doc. # 85-1) be denied. (*Id.* at 19–20).

## IV. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Civil Procedure 72, following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to

the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered a waiver of the party's right to review. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 147. Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001). "Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)) (internal quotation marks omitted).

**B. McKenzie's Objections**

McKenzie objects to Judge Ingram's Recommended Disposition on two bases. First, he argues that the evidence does not support Judge Ingram's conclusion that McKenzie was involved in the denial of Padgett's protective custody decision because McKenzie's designee, Jami L. Elam, signed Padgett's protective custody request, not McKenzie. (Doc. # 99 at 2–3). Because McKenzie himself did not review the forms and was not, in his words, "involved in the protective custody process," he contends that no

genuine issues of material facts exist because he was not aware of a risk of harm to Padgett. (*Id.* at 4). The Court will quickly reject this argument. First, McKenzie does not reject the premise that Elam was his designee for the purposes of the forms. (*See id.* at 2). All he claims is that J. Elam is not him, which is true, and that the form is signed by J. Elam, which is also true. However, on the protective custody request (Doc. # 84-1), Elam signed on the line labeled "Warden's Decision," which leads the Court to believe Elam had McKenzie's consent before signing. *See Mitchell v. Chandler*, No. CIV-A 3:04-CV-P563-C, 2006 WL 2802262, at *9 n.20 (W.D. Ky. Sept. 27, 2006) (finding that a designee signing on the line designated for the warden suggests that the warden gave the designee the power to carry out actions on the warden's behalf). And since McKenzie does not claim that Elam usurped his powers as Warden in this instance, the Court concludes that a jury could find that McKenzie gave his consent to the denial of Padgett's protective custody order. As such, the Court will **overrule** his objection that he was uninvolved in the denial of Padgett's request and will uphold Judge Ingram's decision.

Next McKenzie objects to Judge Ingram's finding that he was aware of Padgett's handwritten appeal to the Warden because McKenzie himself did not sign or review the form. (Doc. # 99 at 3). For the same reasons as above, the Court will reject McKenzie's argument. According to Kentucky Corrections Policies and Procedures ("CPP") 18.1(II)(M)(1), an inmate may appeal "any classification action to the Warden or his designee" within five days of a decision. From there, "[t]he Warden or his designee shall respond in writing to an appeal of a classification action within fifteen (15) working days of receipt of the appeal." CPP 18.1(II)(M)(1). Thus, the only person who could answer a

consideration appeal is the Warden or his designee. As mentioned, McKenzie did not sign the appeal. Thus, the only person who could have signed it without usurping McKenzie's authority is a designee. Since Elam served as McKenzie's designee earlier in Padgett's appeals process, the Court does not think it is a stretch that a jury could find that Elam served as McKenzie's designee again. And as the Court has already said, Elam's signing on behalf of the Warden indicates to the Court, and could indicate to a jury, that Warden McKenzie knew of the substance of Padgett's appeal and agreed to deny it accordingly. *See Mitchell*, 2006 WL 2802262, at *9 n.20. As such, the Court finds that Judge Ingram correctly determined that there is a genuine issue of material fact as to whether McKenzie was aware of the threats to Padgett's safety, such that summary judgment is inappropriate. Thus, McKenzie's objections are **overruled**.

## V. CONCLUSION

For the reasons stated, McKenzie has failed to raise any meritorious legal objections to Judge Ingram's Recommended Disposition. Accordingly,

**IT IS ORDERED** as follows:

(1) The Magistrate Judge's Recommended Disposition (Doc. # 98) is **ADOPTED** as the **Opinion** of the Court;

(2) Defendant McKenzie's Objections (Doc. # 99) to the Recommended Disposition are **OVERRULED**;

(3) Defendants' Motion for Summary Judgment (Doc. # 84) is **GRANTED IN PART and DENIED IN PART**, being **granted** as to Plaintiff's claims against Defendants Smith and Smith and **denied** as to Plaintiff's claims against Defendant McKenzie.

(4) Plaintiff's Motion for Summary Judgment (Doc. # 85) is **DENIED**;

(5) Plaintiff's Motion to Amend the Complaint (Doc. # 85-1) is **DENIED**.

This 15th day of September, 2026.

**Signed By:**

***David L. Bunning*** DB

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2024\24-108 Order Adopting R&R (MSJ).docx